## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

IN RE:

DAVID BRIAN MULLINIX                    CASE NO.:  18-10143-KKS
and KAY MICHELE MULINIX,                CHAPTER:  13

     Debtors.

_____/

## ORDER GRANTING *AMENDED MOTION TO DISMISS* (DOC. 23), BUT WITHOUT PREJUDICE

THIS CASE is before the Court upon the *Amended Motion to Dismiss With Prejudice* (Doc. 23) and the *Memorandum of Law in Support of Motion to Dismiss with Prejudice* (the "Motion," Doc. 40), filed on behalf of Creditors, Luis E. Garcia and Tania Garcia, (the "Garcias") and the Chapter 13 Trustee's and Debtors' responses.[1] The Court held hearings on the Motion on August 2, 2018 and September 6, 2018 at which the Debtors, who are self-represented, appeared and gave testimony. For the reasons set forth below, I find that this Chapter 13 case should be dismissed, but without prejudice.

_____

[1] *Chapter 13 Trustee's Response to Luis E. Garcia's and Tania Garcia's Motion to Dismiss with Prejudice*, Doc. 32 and *Chapter 13 Trustee's Memorandum of Law Regarding Dismissal with Prejudice Based on the Pleadings* (collectively, the "Trustee's Response," Doc. 38). Debtors' *Memo to the Court in Reference to Willful Filing,* docketed as a Response, Doc. 39. The Court also heard and received evidence on the *Trustee's Amended Motion to Dismiss*, Doc. 28.

MS

## FACTUAL HISTORY

This is Debtors' third Chapter 13 case in this District. By admission, Debtors filed all three cases as part of their efforts to save their home from foreclosure. Debtors had a lawyer during their first Chapter 13 case, (Case No.: 17-10028-KKS) but he became ill and was unable to continue with representation. Ultimately that case was dismissed at Debtors' request.[2] Debtors filed their second Chapter 13 case without counsel on February 20, 2018 (Case No.: 18-10034-KKS). That case was dismissed because Debtors failed to file required documents, including Schedules, or take steps to cure additional deficiencies.[3]

Debtors filed the instant case on May 31, 2018. To date in this case, Debtors have filed merely a bare-bones Petition and response to the Motion and Chapter 13 Trustee's ("Trustee") pleadings. Despite at least three written orders, and more than one verbal instruction by this

---

[2] *In re Mullinix,* Case No.: 17-10028-KKS, Doc. 68, *Corrected Debtors' Motion for Voluntary Dismissal of Chapter 13 Case;* Doc. 69, *Amended Order Dismissing Case* (Bankr. N.D. Fla).

[3] *In re Mullinix,* Case No.: 18-10034-KKS, Doc. 26, *Order Dismissing Case* (Bankr. N.D. Fla). In this second case, the Court granted Debtors more time to file missing documents and provide papers to the Trustee. Doc. 19. Debtors failed to comply with that Order, so the case was dismissed on April 17, 2018 at Doc. 26 and closed on September 17, 2018. Doc. 34.

Court,[4] Debtors have not filed any of the required documents including: Schedules, Statement of Financial Affairs, Employment Income Records, Summary of Assets and Liabilities, a Chapter 13 Plan or Means Test Calculation. Additionally, the Trustee reports that Debtors have failed to provide her with a copy of their 2017 income tax return. Finally, Debtors have testified that they are operating a business at their home (horse boarding and rider training) but to date have not filed a single monthly operating report. In short, even though Debtors have repeatedly begged this Court in writing and orally to continue giving them more time to save their home, Debtors have done virtually nothing that the Bankruptcy Code requires of them.[5]

At each of the hearings on the Motion, the Court has reminded Debtors, from the bench in open Court, of the need to file required documents and provide missing information to the Trustee. The Court has also urged Debtors to retain a bankruptcy lawyer and has admonished Debtors that if they failed to file and provide missing documents their case would likely be dismissed, and possibly with prejudice. For reasons known only to them, Debtors have, to date,

---

[4] Docs. 5 and 6, Doc. 29.
[5] Doc. 38.

failed to comply with this Court's orders and admonishments.[6] Because Debtors have yet to file the most basic and fundamental pleadings, none of the parties, including the Trustee, the creditors, and this Court, have any idea what Debtors' true assets, liabilities, income and expenses consist of.

## DISCUSSION

Bankruptcy courts have the power to dismiss a case if individuals are not eligible to be Debtors under Chapter 13 because of failure to meet the requirements of subsections 109(a), (e), (g) or (h) of the Bankruptcy Code.[7] The Garcias urge dismissal with prejudice under subsection 109(g)(1), which provides:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.[8]

---

[6] At the last hearing, Mr. Mullinix explained that Debtors have not filed any of the required documents because the bankruptcy forms are too difficult for him to understand.
[7] 8 Collier on Bankruptcy P 1307.04 (16th ed. 2018); 11 U.S.C.§ 109(a), (e), (g) and (h)(2016); *See In re Perkins*, 381 B.R 530 (Bankr. S.D. Ill. 2007) (fact that debtor passed away during case did not raise eligibility issue).
[8] 11 U.S.C.§ 109 (g)(2016); 2 Collier on Bankruptcy P 109.01 (16th ed. 2018).

### A. Debtors' willful failure to abide by every Order of this Court.

For purposes of section 109(g)(1), "willful" means "deliberate or intentional."[9] In defense of a motion to dismiss pursuant to section 109(g)(1), debtors must be permitted to present evidence that indicates that their failure to prosecute the case was not deliberate or intentional.[10] One bankruptcy court recognized that failure to make a payment under a Chapter 13 Plan, or failure to appear at the creditor's meeting or a court hearing, will not, by themselves, be sufficient to sustain a finding of willful conduct.[11] On the other hand, *In re Walker* recognized that "repeated failure to appear or lack of diligence is evidence that the debtor's conduct is willful. Repeated conduct strengthens the inference that the conduct was deliberate… the court will infer from a pattern of dismissals and re-filing in unchanged circumstances willful failure to abide by orders of the court and an

---

[9] *In re Huckeba,* 05-17339-WHD, 2006 WL 6589886, at *3 (Bankr. N.D. Ga. Sept. 9, 2006); *See Walker v. Stanley*, 231 B.R. 343 (Bankr. N.D. Cal. 1999); *See also In re Hollis*, 150 B.R. 145 (D. Md. 1993) (willful act is one that is "intentional, knowing, and voluntary").

[10] *In re Huckeba,* 2006 WL 6589886, at *3; *See In re DeBerry,* 97-37885-S,1998 WL 34342252 (Bankr. E.D. Va. Apr. 1, 1998) (where debtor confused the date for her first meeting of creditors, the court found that the debtor's excuse was sufficient, in the absence of contrary evidence presented by the creditor, to support a finding that the debtor's failure to prosecute the case was not willful); *In re Faulkner*, 187 B.R. 1019 (Bankr. S.D. Ga. 1995) (where debtor established that his failure to make payments under Chapter 13 Plan was caused by medical problems, court found no basis upon which to apply section 109(g)(1)).

[11] *In re Huckeba,* 2006 WL 6589886, at *3  quoting *In re Walker (Walker v. Stanley)*, 231 B.R. 343, 348 (Bankr. N.D. Cal. 1999).

abuse of the bankruptcy process which this amendment was designed to prevent."[12] The bankruptcy court in *In re Arena* established three bases for determining that a debtor acted willfully for purposes of section 109(g)(1): "(1) the debtor's admission of willful conduct; (2) the debtor's lack of credibility in denying willful conduct; or (3) adverse inferences drawn from the circumstances that indicate that repeated filings were intended as an abuse of the Bankruptcy Code."[13]

Some of the facts and circumstances in this case could lead one to infer that the Debtors filed the case in bad faith. Other facts suggest the opposite.  Debtors' behavior in a prior case, testimony as to why they filed repeat cases, payments to the Trustee in two of their three cases, and appearances at each hearing in this case to date negate the adverse inferences.  For example, Debtors' attorney in their first case became gravely ill; a circumstance clearly outside Debtors' control. Before they requested that their first case be dismissed, Debtors filed all of their required papers, including Schedules, Statement of Financial Affairs and a Chapter 13 Plan, appeared at the § 341 Meeting, and requested additional time within which to file an

---

[12] *Walker v. Stanley,* 231 B.R. at 348.
[13] *In re Arena,* 81 B.R. 851, 853 (Bankr. E.D. Pa. 1988).

amended Plan; they also made adequate protection payments to the Garcias.[14] During their first case, Debtors suffered damages to their property due to Hurricane Irma.  Only after that did they request dismissal of that case in an effort to obtain use of the casualty insurance money with which to make necessary repairs.[15]

Debtors filed their second case on February 20, 2018 to stop the foreclosure sale of their home, having been unable to come to terms with the Garcias on use of the $20,000 insurance proceeds from Hurricane Irma. By this time Debtors were without counsel. Ultimately, the second case was dismissed due to Debtors' failure to file required documents.[16]

In this case, the Clerk issued a Clerk's Deficiency Notice that advised Debtors of due dates for specific documents, including Schedules A-J, Employment Income Records, Statement of Financial

---

[14] *In re Mullinix,* Case No. 17-10028-KKS, Doc. 24, *Schedules*; Amended by Doc. 32; Doc. 36, *Chapter 13 Plan*; Doc. 44, *Order Denying Motion for Relief from the Automatic Stay (Doc. 21) Without Prejudice and Granting Adequate* Protection; Doc. 57, *Amended Consent Motion for Extension of Time to File Amended Chapter 13 Plan*; Doc. 58, *Amended Consent Motion to Continue Confirmation Hearing*; and Doc. 59, *Order Granting Amended Consent Motion to Continue Confirmation Hearing (Doc. No. 58)* (Bankr. N.D. Fla).

[15] *In re Mullinix*, Case No. 17-10028-KKS, Doc. 68, *Corrected Debtor's Motion for Voluntary Dismissal of Chapter 13 Case* (Bankr. N.D. Fla).  In the motion to dismiss their first case, Debtors represented that they had suffered "severe damages to the roof of the house, flooding in the house, damage to the septic tank and drain, destruction to the barn roof, damage to the pole barn," and loss of approximately 1000 feet out of 1700 exterior feet of fencing on their property.

[16] *In re Mullinix*, Case No. 18-10034, Doc. 26, *Order Dismissing Case* (Bankr. N.D. Fla).

Affairs and the Chapter 13 Means Test.[17]  To date, Debtors have filed none of these required documents, even though this Court granted their request for additional time within which to do so.[18]  On June 1, 2018, this Court entered an order requiring Debtors to file a proper Form B121 – Statement of Social Security Number within five (5) days.[19] Debtors have still not complied with that Order.[20]

On June 1, 2018, this Court issued its standard Chapter 13 "Duties of the Debtor" Order.[21] That order required, among other things, that Debtors attend the 341 Creditor Meeting; file and serve a Chapter 13 Plan no later than fourteen (14) days from the date of filing of the Chapter 13 Petition; file and serve Notice(s) of Adequate Protection Payments in accordance with this Court's Chapter 13 Standing Order;[22] provide in the plan that all post-petition payments to holders of secured claims will be disbursed by the Trustee; and commence making payments to the Trustee as proposed by the plan or

---

[17] Doc. 1.
[18] Doc. 29 (giving Debtors fourteen (14) days from the date of the Motion to file the required documents).
[19] Doc. 5.
[20] Debtors had previously filed a form B121, but only listed Mr. Mullinix's Social Security number, rather than both Debtors' Social Security Numbers. Doc. 2.
[21] *Order Establishing Duties of the Debtor and Chapter 13 Trustee, Adequate Protection of Secured Claims, Allowance of Administrative Expenses and Confirmation Procedures*, Doc. 6.
[22] Standing Order No. 19, Amended.

any amended plan within 30 days after the petition date unless otherwise ordered by the Court.[23]  To date, Debtors have not complied with that order, other than to make some payments to the Trustee.[24]

At the evidentiary hearing and in their papers, Debtors deny that their failure to abide by this Court's orders and the requirements of the Bankruptcy Code have been deliberate.  Rather, Debtors maintain that their failure to comply has been a result of a series of unfortunate events: loss of counsel, medical issues, postal issues, and difficulty, without an attorney, understanding how to file pleadings in the proper form.[25] Debtors allege that prior to filing the instant case they had retained the services of attorney Curtis Elmore to represent them in the foreclosure action.[26] Attorney Elmore turned the case over to attorney James Cerveny.[27] After several months, attorney Cerveny informed Debtors that he was ill and would not be able to continue with representation.[28] Afterwards, in a  continuing effort to save their home and livelihood from foreclosure, Debtors stated that they filed the

---

[23] Doc. 6.
[24] Doc. 38, p. 3.
[25] Doc. 39.
[26] *Id.*
[27] *Id.*
[28] *Id.*

petition commencing this case on their own. Debtors have consistently represented that they have been attempting to retain counsel. At the last evidentiary hearing, Debtors testified that one bankruptcy lawyer with whom they had consulted was willing to undertake their representation only if the instant case was dismissed.[29] Debtors maintain that Mr. Mullinix's health condition makes proceeding in this case without counsel very difficult.[30]

Debtors' repeat filings and failure to abide by this Court's orders have affected their primary creditors, the Garcias, who are not a financial institution but individuals. The Garcias sold this home and property to Debtors on or about July 31, 1998 and took back a purchase-money mortgage.[31] Ms. Garcia testified that the payments due from Debtors were designed to supplement the Garcias' retirement income.

---

[29] *Id.* In their Response to the Motion, Debtors represented that they were scheduled to meet with an attorney on September 24, 2018. To date, no one has filed a Notice of Appearance for Debtors on the Docket.

[30] Mr. Mullinix claims to suffer with "confusion, hallucinations delusions, compulsive behaviors, forgetfulness, memory, thinking, depression and insomnia." *Id.* Debtors also claim that they have had issues with their postal service and were not receiving mail for some time, but the issue has now been resolved. *Id.*

[31] *In re Mullinix,* Case No.: 17-10028-KKS, Doc. 21, *Motion for Relief from the Automatic Stay* (Bankr. N.D. Fla).

Debtors have apparently struggled to make payments on their debt to the Garcias for a long time.  The documents attached to the Garcias' Proof of Claim, and Ms. Garcia's testimony at the evidentiary hearing, show that the Garcias have modified the payment terms of the note and mortgage multiple times over many years.[32]  According to Ms. Garcia, sometime in 2015 Debtors again stopped making mortgage payments and would not answer or return her telephone calls.  When communications with Debtors ceased, the Garcias decided that they had had enough and retained an attorney to foreclose on their mortgage.  The Garcias filed their mortgage foreclosure action against Debtors in 2015; the General Magistrate held a non-jury trial on October 19, 2016, that resulted in the Circuit Court entering a *Consent Final Judgment of Foreclosure* on October 24, 2016.[33]  That document scheduled the first foreclosure sale to take place on February 2, 2017.  Debtors' first Chapter 13 case stayed that foreclosure sale.

Upon dismissal of each of Debtors' first two bankruptcy cases the Garcias' state court lawyer had the foreclosure sale rescheduled.  This cost the Garcias money in attorney fees, costs of sale, and advertising.

---

[32] *See* Claims Register, Proof of Claim 5-1.
[33] *Id.* at pp. 9-13.

Each bankruptcy petition filed by Debtors has stayed the foreclosure sale and delayed the Garcias' continued efforts to foreclose on Debtors' home, sell the property and collect their money.  It has also cost the Garcias additional money in bankruptcy attorney fees.

The Garcias submitted no evidence to disprove Debtors' testimony about Mr. Mullinix's health.[34]  Rather, the Garcias suggest that if Mr. Mullinix's medical issues are as severe as Debtors claim, the likelihood of operating their business and successfully completing a Chapter 13 Plan seems remote, if not impossible.[35]

The Garcias have had the legal ability to continue with their foreclosure since the inception of this case.  In July this Court granted their motion to determine that the automatic stay did not become effective upon Debtors' filing of the petition commencing this case.[36] Nonetheless, the Garcias urge this Court not just to dismiss this case, but to dismiss it with prejudice for 180 days.  Their goal is to reschedule

---

[34] According to Debtors, Mr. Mullinix suffers from Parkinson's disease, pulmonary embolism, degenerative disc disease in his neck and a ruptured disc in his back. He was awarded 10% disability by the military as a disabled veteran and was working to try to make the property habitable again after the hurricane.  *In re Mullinix,* Case No.: 17-10028-KKS, Doc. 68, ¶4, *Corrected Debtors Motion for Voluntary Dismissal of Chapter 13 Case* (Bankr. N.D. Fla).

[35] Doc. 40, p 5.

[36] Doc. 21.

the foreclosure sale for the third time, and conduct and finalize the sale before Debtors can file a new bankruptcy petition.

### B. The captive insurance proceeds from damage to Debtors' home and property.

Hurricane Irma roared into the Gainesville Florida area on September 10, 2017.[37]  Yet, as of the final hearing last month Debtors had not yet made significant repairs to their home or property.  Why?  Because the Garcias have not allowed Debtors to negotiate the check for approximately $20,000 in insurance proceeds.   According to Debtors, rather than cosigning the check to allow Debtors to make needed repairs, the Garcias, through their state court attorney, offered to give Debtors fifty (50%) percent of the insurance proceeds in exchange for Debtors' promise not to file another bankruptcy.[38]   As a

---

[37] Alex Calamia, *Hurricane Irma: One Year Anniversary*, WCJB TV20, (last updated Sept. 11, 2018) https://www.wcjb.com/content/news/Hurricane-Irma-One-Year-Anniversary-492899611.html.

[38] Debtors testified that this offer was made while they still had Mr. Cerveny as their bankruptcy counsel, and that Mr. Cerveny recommended that they not accept.  Debtors wisely followed the advice of their prior lawyer.  Even had Debtors accepted such an offer, it would have been unenforceable.  *See, e.g., In re Intervention Energy Holdings, LLC,* 553 B.R. 258, 263 (Bankr. D. Del. 2016) ("It has been said many times and many ways. '[P]repetition agreements purporting to interfere with a debtor's rights under the Bankruptcy Code are not enforceable.' … '[A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code pre-empts the private right to contract around its essential provisions.' '[I]t would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply.' 'It is a well settled principal that an advance agreement to waive the benefits conferred by the bankruptcy laws is wholly void as against public policy.'")

13

direct result the insurance money was, as of the final hearing more than a year after Hurricane Irma, still sitting unused.  As a proximate result of the insurance money being held hostage, Debtors have been unable to make most of the major repairs to their home and property.  This, in turn, has prevented Debtors from making as much money in their business.[39]

### C. Debtors' alleged inability to fund and successfully complete a Chapter 13 Plan.

The Garcias argue that Debtors are incapable of filing and confirming a feasible Chapter 13 Plan.  They support this argument with the Schedules Debtors filed in their first case, which reflect gross income of $6,800 per month.[40]  But, Debtors testified at the evidentiary hearing that they anticipate Ms. Mullinix's income will increase from $300 to $2,000 per month.[41] They also anticipate that Mr. Mullinix's monthly income will increase from $6,500 to $6,800, bringing Debtors' total monthly income to $8,800 per month.[42]

---

[39] Neither the Garcias nor the Trustee mention the insurance money in their papers.  Nor do they address what might occur should that money be made available to make repairs to Debtors' property.  Debtors' unrefuted testimony is that among other things, not being able to repair the barn and fences has prevented them from scheduling and hosting horse shows and other events.

[40] *In re Mullinix,* Case No.: 17-10028-KKS, Doc. 24, p. 26, *All Remaining Schedules* (Bankr. N.D. Fla); *See* Doc. 38, p. 3.

[41] Doc. 38, p. 3.

[42] *Id.*

Even with these higher monthly income totals, the Trustee believes that Debtors will still be unable to fund a sixty (60) month plan.[43]  The Garcias hold a claim for $380,941.99, based on the final judgment of foreclosure.[44] For this claim to be paid in full during the required sixty months of a Chapter 13 Plan, the Trustee estimates that Debtors' plan base would have to be $488,046.00, inclusive of Trustee's statutory commissions.[45] This works out to sixty (60) monthly payments of $8,134.10.[46]

If this case were not dismissed, Debtor's economic situation would be even more dire.  Under the Trustee's analysis, because Debtors only paid $9,300 in the first four months of the case, if this case were to proceed they would have to pay the balance of the plan base over 56 months or less, which would necessitate monthly payments of at least $8,549.04.

Numbers don't lie.  The numbers put forth thus far show that Debtors cannot fund a feasible Chapter 13 plan in the months

---

[43] *Id.* at p. 4.
[44] *Id.*
[45] *Id.*
[46] *Id.*  The Trustee's analysis is as accurate as anyone's can be where, as here, no one has any current information about the Debtors' true income and expenses.

remaining in this case.  The numbers also show that Debtors may barely be able to fund a sixty-month plan in a new case.

On the other hand, it is inequitable for a creditor to impair a debtor's ability to make a living and then complain that the same debtor can't make enough money with which to fund a Chapter 13 Plan. Although no one in this case has enough information with which to accurately determine whether Debtors are capable of filing and confirming a feasible Chapter 13 Plan, it is unreasonable to conclude that Debtors cannot do so when their ability to earn a living has been so impaired.

Because Debtors have not filed required documents, are in violation of the "Duties of the Debtor" Order, have failed to file monthly operating reports, and are otherwise out of compliance with Chapter 13 requirements, this case should be dismissed.  But, the facts here do not support a dismissal with prejudice under Section 109(g) of the Code, and neither does the caselaw.

In *In re Binitie*, the District Court for the Northern District of Florida upheld this Court's dismissal with prejudice of a debtor's third case in two years where the debtor failed to make any payments to the

Trustee and failed to attend the 341 Meeting.[47] The debtor in *Binitie* presented no evidence of any medical condition or any other justification for his failures.[48]  Under those facts, the bankruptcy court determined that the debtor's failures showed a lack of good faith; the district court agreed.[49]  Unlike the debtor in *Binitie*, these Debtors have made payments to the Trustee in two of their three cases, have filed necessary papers in one of the cases, and have appeared at every hearing in this case.

On the issue of dismissal with prejudice, the equities favor the Debtors.[50]

### D. Dismissal of the case with prejudice under 11 U.S.C.§ 105(a).

As an alternative to dismissal under Section 109(g), the Garcias request dismissal of this case under 11 U.S.C.§ 105(a), citing this Court's decision in *In re Brown*.[51] The facts in *In re Brown* are

---

[47] *Binitie v. Heart* [*Sic*], 4:11-CV-275-SPM/WCS, 2012 WL 858587 (N.D. Fla. Mar. 13, 2012).

[48] *Id.*

[49] *Id.*

[50] The unreported cases cited by the Garcias are distinguishable. *In re Delice,* 6:12-BK-05061-ABB, 2012 WL 2050421 (Bankr. M.D. Fla., June 5, 2012), does not provide any facts other than that the debtor had filed three bankruptcy petitions within one year and four cases after the lender filed its foreclosure.  Similarly, the debtor in *In re St. Hilaire,* 6:12-BK-03266-ABB, 2012 WL 1564553 (Bankr. M.D. Fla. May 2, 2012) had also filed three bankruptcy petitions within one year.

[51] *In re Brown*, 17-10021-KKS, 2017 WL 3493101 (Bankr. N.D. Fla. Apr. 19, 2017).

distinguishable and do not support use of Section 105's "all writs" powers here.

In *In re Brown*, the debtor was before this Court in his first and only bankruptcy filed in this District.[52] Before the debtor filed his Chapter 13 Petition, his mother had been a debtor in no fewer than eleven (11) bankruptcy cases filed in this Court; she filed the last four cases during five years, all to stay a foreclosure on her home.[53]    The debtor in *Brown* had only a possessory right to the home (he lived there with his girlfriend and child, along with his mother and some siblings) and did not have legal ownership of the property.[54]    The debtor in *Brown* admitted that he filed his bankruptcy case solely to stay the foreclosure on the property; he testified that he had grown up in the home, and that he considered the property to be "his" because it had always been his home and his father intended him to have it.[55]    The debtor filed his Chapter 13 case only after this Court had entered an order precluding his mother from filing another case for a period of two years; he admitted that his mother had helped him prepare his

---

[52] *Id.* at *1.
[53] *Id.* The mother had made no payments on the mortgage since 2011; this Court dismissed her fourth case with prejudice for two years in 2015. *Id.* at *3.
[54] *Id.* at *2.
[55] *Id.* at *3.

Chapter 13 papers.[56]  Mr. Brown made no provision for payment of the mortgage on the property in his plan and had only two creditors to whom he was making current payments.[57]   For those reasons, and many others, this Court granted prospective stay relief to the mortgage creditor pursuant to 11 U.S.C.§ 362(d)(4) and, citing ample case law, under 11 U.S.C.§ 105(a) further enjoined the mother, not then a debtor, from filing another petition for 180 days.[58]

In the instant case, the Debtors' actions do not rise anywhere near the level of the egregious conduct of the debtor and, in particular, his mother in *In re Brown.*

## CONCLUSION

The Trustee cites *In re Sullivan*, in which one bankruptcy court observed that "ultimately, the appropriateness of a post-dismissal injunction comes down to the severity of the conduct at issue."[59]   I concur.  Taking all facts into consideration—in particular, Debtors' prolonged inability to make needed repairs to their home, barn and property because of insurance proceeds held captive by the mortgage

---

[56] *Id.* at *4.
[57] *Id.*  Mr. Brown was not personally liable on the note and mortgage on the home.
[58] *Id.* at *12.
[59] *In re Sullivan*, 11-03291, 2011 WL 6148709, at *3 (Bankr. S.D. Ala. Dec. 12, 2011).

holder—Debtors' conduct has not been so severe as to warrant dismissal of the instant case with an injunction against refiling for 180 days.

For the reasons stated, it is

ORDERED:

1. The *Amended Motion to Dismiss With Prejudice* (Doc. 23) is GRANTED, in part.  This case is dismissed.

2. Dismissal with prejudice is DENIED.

DONE AND ORDERED on  ___October 18, 2018_____ .

KAREN K. SPECIE
Chief U. S. Bankruptcy Judge

cc:  all parties in interest, including:
David Brian Mullinix
14004 NE State Rd 26
Gainesville, FL 32641

Kay Michele Mullinix
14004 NE State Rd 26
Gainesville, FL 32641

Attorney for Creditors, Luis E. Garcia and Tania Garcia, is directed to serve a copy of this Order on interested parties and filed a proof of service within 3 days of the Order.